### NISBET v. PERKINS.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 129.

Patents ⬅328—For wind shield valid and infringed.

　　The Nisbet patent, No. 1,238,803, for a wind shield for protecting the tonneau seats in passenger cars, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Southern District of New York. ·　　＇

Suit by Theodore B. Nisbet against Alonzo D. Perkins. Decree for complainant, and defendant appeals. Affirmed.

W. P. Preble, of New York City, for appellant.

Frank C. Cole, of New York City (Thomas Ewing, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Letters patent No. 1,238,803, for an improvement in a wind shield for automobiles, was granted to the appellee on September 4, 1917. Claiming that the appellant infringed the appellee's patent, the appellee sued for such infringement. Claims 2 and 4 are relied on, and are as follows:

　　"2. The combination of a pair of relatively movable rods, each of which is pivoted to move in a horizontal plane and capable of being brought into an overlapping position, sleeves slidably mounted upon the rods and movable longitudinally thereof, a wind shield with hinge ears and hinge pins for engaging the hinge ears supported by the sleeves, the hinge pins being sufficiently flexible

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to permit the wind shield to be folded around the rods when they are in approximate alignment, substantially as described."

"4. The combination of a pair of relatively movable rods, each of which is pivoted to move in a horizontal plane and capable of being brought into an overlapping position, sleeves slidably mounted upon the rods and movable longitudinally thereof, a wind shield comprising a main shield and a plurality of auxiliary shields, hinges connecting the main shield with the auxiliary shield, comprising wing members and connecting pins, tubes located between the cofunctioning hinges and surrounding the pins, the pins being supported by and relatively movable with respect to the said sleeves, whereby the wind shield, with the sleeves, may be folded around the rods when they are in approximate alignment, substantially as described."

The wind shield in question is made for the protection of the rear seats for the larger type of passenger cars and is referred to as a tonneau wind shield. It is constructed so as to have a middle section of glass, flanked on both sides with smaller sections of wing glass. A support is provided upon the back of the front seat, and when the wind shield is opened and in use it is in front of the rear seat. When not in use, it may be turned down and so folded as to lie against the back of the front seat, with its upper edge brought close to the floor of the car. The improvement, which is the subject-matter of this invention, is the flexibility in the support which makes it possible to turn the shield down from the position of use to the position of nonuse. The shield is supported between hinge pins. These are made flexible. It is the flexibility that makes operative the folding down of the wind shield. This is an improvement of construction, and not merely an obvious function. There was a need in the art for such a convenience, and for protection against tearing of clothing; and this, that a shield be devised so that it might turn down and lie in an out of the way position and preferably against the back of the front seat, where it would be accessible and handy to again put it in a position of use without great inconvenience. This problem was attempted to be met by prior efforts of inventors and is best illustrated by the patents to Auster, Labonte and Hofbauer.

The appellant relied mainly upon the Hofbauer patent in his claim of anticipation. Hofbauer's wind shield provided two elements for effecting the folding. One is a pair of sleeves sliding on the supporting rods for getting the shield forward, away from its position of normal use, to where it can be folded down. The other is a pair of hinges fitted with teeth and a clamp screw, whereby the shield may be swung backwards and downwards, until it lies close to the foot of the back of the front seat. The sleeves and hinges are separate, and because of this become perfectly aligned with each other. Because these two elements were separate, their juxtaposition made the supports of the shields awkward and inconvenient for passengers, both for manipulation and for passage. That the appellee's device is an improvement is best evidenced by the now nonuse of the Hofbauer device. Appellee accomplished the result of avoiding the objections to the use of the toothed joint, using sleeves which both slide upon the supporting rods when they are extended backwards and rotate around them when they are swung parallel with the back of the front seat. It was necessary to modify his construction further because the two sup-

porting rods, when swung nominally parallel with the seat back, could not come truly parallel to each other because of overlapping. If the folding was enforced in this situation, something must either bend or break. To overcome this, he conceived the idea of hinge pins which were flexible, and yet strong and rigid enough to meet the wind pressure and jolting incurred upon the road. With the flexibility of the hinge pins, there was sufficient accommodation to permit of folding down the wind shield in the way planned.

In claims 2 and 4 of the patent, the flexibility is fully described. The drawings show it. The shield form is rigidly connected to the sleeves which slide upon supporting rods. Rigidly connected with these sleeves are hinge pins, with which ears on the metallic corner pieces of the frame of the shield engage at the top and bottom. There is sufficient looseness to permit the sleeves sliding upon the rods and yet not enough to permit of rattling. The introduction of flexibility permitted the use of the sleeve of the appellee's patent to serve both as a slide upon the supporting rod and as a hinge for turning down the shield by simple rotation of the slidable sleeves by the supporting rods, while the rods are folded back against the rear of the front seat. Thus appellee affected two functions for which Hofbauer had provided a separate independent hinge and clamp, which was objectionable in practice. We think the result obtained by the appellee is novel. The prior art does not disclose the flexibility of the hinge pins, either during or owing to the turning of the wind shield around the overlapping supporting rods as axes of rotation. We find nothing in the prior art which indicates a tendency to bend the hinge pins. This applies to the three patents above, which are referred to as the prior art. Upon placing the finger in a position to observe by touch this bend, it is obvious that there is a substantial bending of the pins, and this answers, in a practical way, the claim that there is no bending. Indeed, if there was no bending, the mounting must either bend or there will be a break.

We think the result is accomplished solely through the flexure of the hinge pins. The appellant's wind shield differs from the appellee's wind shield only in so far as the brackets attached to the sleeve are in the form of a goose neck, instead of being straight. We find that flexure is not avoided in appellant's structure by the claim of the presence of lost motion between rod and sleeve. There is not sufficient lost motion to leave the structure mechanically acceptable, and not permit rattling, and yet function without the bending of the hinge pins in appellant's structure. We think it is no answer to say to this that the goose neck eliminates the requirements for flexure on the hinge pins. The presence of the goose neck is therefore irrelevant.

Decree affirmed.